# UNITED STATES DISTRICT COURT

EASTERN DISTRICT OF CALIFORNIA

| | |
|---|---|
| EQUAL EMPLOYMENT OPPORTUNITY COMMISSION,<br><br>　　　　　　　　Plaintiff,<br><br>　v.<br><br>CALIFORNIA PSYCHIATRIC TRANSITIONS,<br><br>　　　　　　　　Defendant.<br>_____/ | CASE NO. 1:06-CV-1251 OWW GSA<br><br>ORDER REGARDING DISCOVERY DISAGREEMENTS<br><br>(Docs. 38 and 52) |

## I. Introduction

Plaintiff, United States Equal Employment Opportunity Commission (hereinafter, "EEOC" or "Commission") filed a Motion to Schedule a Hearing Date Regarding Discovery Disagreements on May 4, 2009. (Doc. 38). EEOC and California Psychiatric Transitions Inc., (hereinafter, "CPT" for "Defendant") filed a Joint Statement Regarding Discovery Disagreements (hereinafter, "Joint Statement") on June 2, 2009. (Doc. 52). The Court held a hearing on June 5, 2009. Dana Johnson personally appeared on behalf of the EEOC. Henry Truszkowski personally appeared on behalf of the Defendant. Having considered the pleadings and the arguments of counsel, each of the parties' requests are GRANTED IN PART AND DENIED IN PART.

///

1

## II. Background

This case is proceeding on a complaint filed by the EEOC against CPT. The EEOC alleges that charging parties Valerie Soares (aka Valerie Shaw) and Mariel Somera (hereinafter "Charging Party Soares," "Charging Party Somera," and collectively, "Charging Parties"), as well as thirteen other women were subjected to unlawful harassment. The EEOC alleges that the harassment was perpetrated mainly by the supervisor of mental health workers, Larry Fuentes, and to a lesser degree by CPT's Director, James Drayton (hereinafter, "Drayton"), as well as various other supervisors and non-supervisory employees. The EEOC alleges that Charging Party Soares was discharged in retaliation for having engaged in protected activity.

The EEOC first became aware of the alleged violations at CPT on April 26, 2004, when Charging Party Soares filed a charge of discrimination alleging that she and other women had been sexually harassed. On September 27, 2004, the EEOC received a similar charge from Mariel Somera. The EEOC provided CPT with notice of the charges and commenced an investigation. The EEOC investigator, Malinda Tuazon, conducted interviews and gathered documents. In the course of her investigation, she created an administrative file for each charge. After the investigations were completed, the EEOC determined that there was reasonable cause to believe that discrimination had occurred, and sent letters of determination (hereinafter, "LOD") to CPT. After the parties were unable to resolve the matter, EEOC notified CPT that it deemed conciliation efforts to have failed and filed the instant lawsuit on September 13, 2006, alleging violations under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e-2(a).

Pending before the Court are the parties' discovery disputes contained in a joint statement filed on June 2, 2009. There are three discovery disputes at issue in this case. First, the EEOC moves to compel CPT to respond to a request for production of documents related to CPT's financial condition. CPT has objected to this request for production and requests the motion be denied. Second, Defendants request that they be allowed to take the deposition of EEOC investigator Malinda Tuazon and of EEOC's Rule 30(b)(6) designee. EEOC requests that the Court issue an order prohibiting the taking of the depositions. Finally, Defendants request that the Court enforce a subpoena duces tecum that requires Daisy Iilano, M.D., to produce the medical/psychological records

of Shirley Kennedy, one of plaintiffs in this case. EEOC requests that the Court quash the subpoena.

### III. Discussion

**The Scope of Discovery**

Fed.R.Civ.P. 26(b) establishes the scope of discovery and states in pertinent part:

> Parties may obtain discovery regarding any matter, non privileged, that is relevant to any party's claim or defense, including the existence, description, nature, custody, condition, and location of any books, documents, or other tangible things and the identity and location of persons having knowledge of any discoverable matter. For good cause, the court may order discovery of any matter relevant to the subject matter involved in the action. Relevant information need not be admissible at trial if the discovery appears reasonably calculated to lead to the discovery of admissible evidence.
> Id.

Thus, discovery is appropriate of any matter relevant to the subject matter involved in the action. "The party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections." Oakes v. Halvorsen Marine Ltd., 179 F.R.D 281, 283 (C.D. Cal. 1998); Nestle Foods Corp. v. Aetna Casualty & Surety Co., 135 F.R.D. 101, 104 (D. N.J. 1990).

*A.     EEOC's request for Financial Documents*

On February 28, 2007, the EEOC propounded its first request for the production of documents which included the following :

Request for Production No. 8:

Produce any and all documents on the issue of each of the defendant's current financial condition, financial condition, and projected financial condition. This includes but is not limited to the following :

    a.    Balance Sheets for the years 2002 through the present.

    b.    Statements of Income for the years 2002 through the present.

    c.    Federal Tax Returns for the years 2002 through the present.

    d.    Profit and Loss Statements for the years 2002 through the present.

    e.    Statement of Cash Flow for the years 2002 through the present.

    f.    Schedules of General Administrative Expenses for the years 2002 through the present.

///

On April 17, 2007, CPT responded to the EEOC's request for Production No. 8 as follows:

Response Request for Production No. 8:

Objection. The request seeks information which constitutes private, financial information, including tax information, and is protected from disclosure under the California Constitution. No documents will be produced.

### EEOC's Position

The EEOC contends that because the suit involves the possibility of punitive damages, the broad scope of discovery permits that the "net worth and financial condition" of the defendant be disclosed. Plaintiff argues that an overwhelming majority of federal courts have concluded that a plaintiff seeking punitive damages is entitled to discover information related to the defendant's financial condition in advance of trial. This is true when damages are made under the Civil Rights Act of 1991. Furthermore, most courts do not require that a plaintiff establish a prima facie showing of entitlement to punitive damages before discovering the defendant's financial condition. The Court can devise a protective order to ensure that this evidence is not used outside of the litigation.

Defendant's objection to the material based on a violation of privacy under the California Constitution is misplaced because as a preliminary matter, California Law cannot frustrate federal law. Even if the right to privacy contained in the California Constitution were to effect this proceeding, the right to privacy set forth in Article I, Section I of the California Constitution is not an absolute right but is subject to invasion depending on the circumstances. The court should balance the interests of the parties. Here, the EEOC needs this information in order to prepare for trial with regard to the punitive damages claim. Any concerns related to CPT privacy rights can be addressed with a protective order.

### CPT's Position

CPT argues that the pre-trial disclosure of CPT's financial records from 2002 to the present is overbroad and hinge upon bare and conclusory allegations that CPT acted with malice and willful disregard for the rights of its female employees. While EEOC argues that pretrial discovery of financial statements is relevant to a punitive damages claim which, is generally permissible without any prima facie showing of entitlement to such damages, the complaint on its face must allege

sufficient facts demonstrating to the court that punitive damages will be an issue. No specific facts are alleged in the complaint in this case. Instead, the EEOC only alleges in conclusory terms that CPT subjected the plaintiffs to a "sexually hostile, abusive, intimidating, and offensive work environment."

If the Court were to conclude that pre-trial disclosure of financial information is justified, such disclosure should be narrow and subject to adequate protections. EEOC's current request is overbroad in scope and seeks financial records dating back to 2002. A request for non-current financial information is irrelevant to a punitive damages determination. Even where a claim for punitive damages has some factual support, discovery related to financial status should be limited to net worth and the production of an annual or period balance sheet under an appropriate protective order.

*1.    Analysis*

Title VII as amended by the Civil Rights Act of 1991, provides that punitive damages may be awarded "if the complaining party demonstrates that the respondent engaged in a discriminatory practice ... with malice or with reckless indifference to the federally protected rights of an aggrieved individual. 42 U.S.C § 1981a(b)(1). Thus, the request for financial information is relevant as this information is generally admissible at trial given EEOC's claim for punitive damages. See, City of Newport v. Fact Concerts, Inc., 453 U.S. 247, 267 (1981) (noting that under federal law, evidence of a defendant's financial worth is traditionally admissible for the purpose of evaluating the amount of punitive damages that should be awarded). The question is to what extent, and when financial information should be disclosed.

The Ninth Circuit has not defined the parameters of the dissemination of financial information during discovery when punitive damages are alleged. Two approaches have emerged regarding this issue. The approach employed by the majority of federal courts is that "a plaintiff seeking punitive damages is entitled to discover information relating to the defendant's financial condition in advance of trial without making a prima facie showing that he is entitled to recover such damages." U.S. v. Matusoff Rental Co., 204 F.R.D. 396, 399 (W.D. Ohio, 2001); See also, EEOC v. Klockner H & K Machines, 168 F.R.D. 233, 235-236 (E.D. Wis. 1996) (finding defendant's argument that plaintiff needs to make a prima facie showing of entitlement to punitive damages in order to gain access to the

5

defendant's financial information was not supported by the case law); EEOC v. Staffing Network, 2002 WL 31473840 at *3-4 (N.D. Ill., Nov. 4, 2002) (same, ordering the defendant to comply with EEOC requests for financial statements and tax returns). The countervailing approach is that plaintiff must first allege specific facts sufficient to support a claim for punitive damages. See e.g., Chenoweth v. Schlaaf, 98 F.R.D. 587, 589 (WD PA 1983) (in medical malpractice action doctors were not required to disclose information concerning their financial conditions when complaint did not contain allegations indicating that there was a real possibility that punitive damages would be an issue); Roberts v. Shawnee Mission Ford., Inc., 2002 WL 1162438 at *2-3 (D. Kan. Feb. 7, 2002) (information of the defendants net worth or financial condition is relevant where allegations are sufficient facts to claim punitive damages); Vivino v. Everlast Sporting Goods Mfg. Co., Inc., 1987 WL 17571 (E.D. Pa. Sept. 28, 1987) (allegations must support contention that defendant's conduct was sufficiently outrageous to warrant punitive damages award and not merely a pretext for unwarranted discovery of financial material).

      Upon an examination of the facts in his case, under either approach, Plaintiff has met its burden. Since Plaintiff has requested punitive damages in the complaint, the standard under the majority approach is satisfied. Similarly, Plaintiff has met the heightened standard under the countervailing approach as there is sufficient evidence in the depositions attached to the Joint Statement establishing that Defendant allegedly acted in reckless disregard of the women's federal rights. This evidence includes : 1) one member of the sexual harassment committee acknowledging that he did not understand what sexual harassment was at the time he was designated to serve on the committee, 2) Director Dayton learning of an episode in which Fuentes told Charging Soares to smells the "balls" of a patient, yet only speaking with the patient and Fuentes and not speaking with Soares - the person to whom the comment was directed- to determine her view of the episode, and 3) Defendant's owner, Dr. Hackett, criticizing supervisor Sherry Wall for being "too close" to the workers she supervised after she conveyed complaints of Fuentes' harassment to upper management. Joint Statement at EEOC Exhibits A-D. Additionally, at the hearing, Plaintiff's counsel represented that Defendant hired Fuentes back after he was no longer employed even after receiving complaints of sexual harassment against him.

Defendants properly assert that financial information is protected by the right to privacy under California law and these privacy rights are generally recognized in federal court. Johnson v. Thompson, 971 F. 2d 1487, 1497 (10th Cir. 1992). However, the right is not absolute and may be subject to invasion depending on the circumstances. Oakes v. Halvorsen Marine Ltd., 279 F.R.D. 281, 284 (C.D. Cal., 1998). Thus, the right to privacy is not a recognized privilege or absolute bar to discovery, but instead is subject to the balancing of needs. F. Jadwin, D.O. County of Kern, 2008 WL 2916386 at *1 (E.D. Cal., July 28, 2008). In this case, any privacy concerns can be addressed with a protective order. Ultimate admissibility of the information will be reserved for the trial judge at the time of trial.

The request for production of documents as drafted however seeks to obtain financial records from 2002 and contains requests for several types of financial information. The requested time period and the types of documents imposed are excessive as Plaintiff can obtain a picture of Defendant's financial condition adequately without all of the requested information. As such, Defendant shall only be required to produce balance sheets, statements of income, and statements of cash flow for the years 2007, 2008, and any available information through 2009. As noted above, this information shall be protected pursuant to a protective order agreed upon by the parties.

*B. The Depositions of the EEOC Investigator and of EEOC's Rule 30(b)(6) Designee*

EEOC's position

Defendant seeks to take the deposition of EEOC investigator Malinda Tuazon and a Fed. R. Civ. P. 30(b)(6) designee on the matter of "any and all findings, recommendations, and conclusions made by [the EEOC] in response to the charges of discrimination made by the Charging Parties." The EEOC opposes the taking of these depositions because the deposition notices: (1) seek factually and legally irrelevant information, 2) invade well-established privileges including the deliberative process privilege, 3) are unreasonably duplicative of previous discovery efforts, seek information already obtained, or are obtainable "from some other source that is more convenient, less burdensome, or less expensive," and 4) that any tangential relevance is outweighed by the substantial burden this type of discovery places on the Commission and its employees. EEOC contends that all of the notes Ms. Tuazon took during the investigation have been provided and there are no other supplemental notes

or information that she could provide during a deposition.

### CPT's Position

CPT argues that Malinda Tuazon was the principal investigator in this case and the EEOC has not produced Ms. Tuazon's handwritten notes or other original source materials from the interviews. Instead, the EEOC has produced typewritten summaries which, for the most part follow a question answer format. It is unclear when the summaries were prepared, who was involved in their preparation, and the identity of the source material. The fact that EEOC argues that it has turned over its complete administrative file does not relieve the EEOC of its obligation under Rule 30(b)(6) to provide a witness to answer questions about the documents for purposes of clarification and interpretation.

In addition, the EEOC has also produced a typewritten memorandum with analysis of the sexual harassment and retaliation charges along with the supporting factual information. One of these memorandum bears a handwritten notation purporting to support the claim that the Charging Party complained about sexual harassment by written note. In another instance, the author of the memorandum concludes that Donna McGowan, was not credible. It is unclear who was involved in the preparation of these memorandum, or when they were prepared.

CPT contends that the EEOC's deliberative process privilege is not relevant because the depositions are limited to the factual investigation and do not offend the privilege. Moreover, the preemptive use of the objection is premature since the deliberative process privilege only protects the opinions, recommendations, and deliberations of the EEOC, not the underlying factual information. The EEOC can raise objections if an offensive question is asked a the time of the deposition.

Furthermore, a dispute has arisen which challenges the premise that certain questions identified in the interview summaries were actually asked of the respective witnesses, and that responses were recorded accurately. It is anticipated that the EEOC will call Ms. Tuazon as a witness to the statements attributed to CPT's employees, including Ms. McGowan. In addition, there are other factual disputes that require further clarification.[1]

---

[1] CPT asserts that these factual discrepancies include the following :
a) EEOC has concluded that Ms. McGowan is management and that she is not credible. CPT is entitled to discovery to uncover and clarify the facts supporting these conclusions;

8

Finally, the EEOC's arguments that producing its investigator and/or Rule 30(b)(6) designee would be an undue burden are misplaced. In the cases cites by the EEOC in support of its undue burden claim, EEOC was not a party to the action. Basic fairness dictates that the EEOC, like all parties submit to lawful discovery. In sum, CPT requests that the Court allow the depositions of Ms. Tuazon and its Rule 30(b)(6) designee to go forward without prejudice to EEOC by allowing it the right to assert any applicable privilege in response to particular deposition questions.

*1. Analysis*

The deliberative process privilege protects "the decision making processes of government agencies." NLRB v. Sears Roebuck & Co., 421 U.S. 132, 150 (1975). In NLRB v. Sear Roebuck & Co., the Supreme Court explained:

> [T]he ultimate purpose of this long-recognized privilege is to prevent injury to the quality of agency decisions . . . 'frank discussion of legal or policy matters' in writing might be inhibited if the discussion were made public . . . as we have said in an analogous context, '(h)uman experience teaches that those who expect public dissemination of their remarks may well temper candor with a concern for appearances . . . to the detriment of the decisionmaking process.'
> NLRB v. Sears Roebuck & Co., 421 U.S. at151 quoting United States v. Nixon, 418 U.S. 683, 705 (1974) (emphasis added).

In order to be protected by the deliberative process privilege, the document must be both "predecisional" and "deliberative." Assembly of the State of California v. United States Department of Commerce, 968 F.2d 916, 920 (9th Cir.1992). A "predecisional" document is one "prepared in order to assist an agency decisionmaker in arriving at his decision," . . . and may include "recommendations, draft documents, proposals, suggestions, and other subjective documents which reflect the personal opinions of the writer rather than the policy of the agency" . . . A predecisional

---

b) The EEOC continues to maintain that Charging Party Soares complained about sexual harassment by way of a hand written note slipped under the door to the office of CPT's Director James Drayton. There is a handwritten entry in the EEOC's administrative file and interrogatory response to that effect. However, at her deposition, Ms. Soares testified that she did not complain to Mr. Drayton and the note was an attempt by her to arrange a meeting to discuss a pay raise;

c) Another putative witness, Audel Mendoza, testified at his deposition that he did not see Ms. Soares write the note, did not know the contents, and did not see Ms. Soares write the note; and

d) When questioned by the EEOC, Mr. Drayton testified that he did not ever find a note from the Charging Party complaining about sexual harassment. The documents produced by the EEOC need clarification and Ms. Tuazon, the EEOC's investigator who conducted the majority of interviews, and the EEOC's Rule 30(b)(6) designee, are the appropriate persons for the depositions.

document is a part of the "deliberative process," if "the disclosure of the materials would expose an agency's decisionmaking process in such a way as to discourage candid discussion within the agency and thereby undermine the agency's ability to perform its functions." Assembly of the State of California, 968 F.2d at 920, quoting Formaldehyde Inst. v. Department of Health and Human Services, 889 F.2d 1118, 1122 (D.C.Cir.1989) (citations omitted). Factual material generally is not considered deliberative, but the fact/opinion distinction should not be applied mechanically. Assembly of the State of California, 968 F.2d at 921-922. Rather, the relevant inquiry is whether "revealing the information exposes the deliberative process." Id.

In this case, many of the questions Defendant is seeking are related to clarifying factual information contained in the EEOC's investigative file and would not be covered under the deliberative process privilege. The information Defendant is seeking is similarly not cummulative because the questions relate to ambiguous references in the investigative file. The court notes that an EEOC lawsuit is a trial de novo and EEOC's investigation is not subject to court review. However, "[p]roviding an investigative file does not relieve the EEOC of its obligation under Rule 30(b)(6) to provide a witness to answer questions about those documents for purposes of clarification and interpretation." EEOC v. LifeCare Mgmt. Services, LLC., 2009 WL 772834 at *2 (W. D. Pa., 2009) citing Tri-State Hosp. Supply Corp v. United States of America, 226 F.R.D. 118, 125-26 (D.DC 2005). Defendant should be able to clarify ambiguities related to the factual aspects of the material. However, any conclusions, interpretations, or recommendations that the investigator formulated would be subject to the privilege. Thus, any impressions of the witnesses including credibility determinations are subject to the privilege and are also irrelevant as credibility determinations are reserved for the trier of fact at trial. Plaintiff can raise those objections on a question by question basis during the deposition. To preclude the deposition at this junction is premature.

Further, there appears to be some dispute whether statements were accurately recorded. It is unclear whether the EEOC intends to call Ms. Tuazon as a witness at trial for any purpose including to establish that certain statements were made by CPT witnesses. If so, then CPT should be allowed to question Ms. Tuazon regarding those issues in order to ascertain whether any inconsistent statements were made by witnesses. Defendants should also be able to depose Ms. Tuazon to

determine whether they might call her as a witness for some reason at trial. The questioning should be limited to factual issues and not relate to her determinations, opinions, or recommendations.

Finally, EEOC's argument that the deposition places a burden on the agency is not compelling. The cases EEOC relies on to support this proposition relate to situations where the EEOC is not a party to the action. In this case, EEOC is a plaintiff. When the government seeks affirmative relief, it is fundamentally unfair to allow it to evade discovery of materials that a private plaintiff would have to turn over. EEOC v. Airborne Express, 1999 WL 124380 at *2 (E.D. Pa., 1999) citing EEOC v. Citizens Bank and Trust Co., 117 F.R.D. 366 (D. Md. 1987).

C.   *The Medical Records of Claimant Shirley Kennedy*

On or about February 27, 2009, CPT served a subpoena duces tecum on Daisy Iilano, M.D., for "[a]ny and all medical records from May 15, 2006 to present, including but not limited to reports, radiological studies, films, or CDS, correspondence and billing invoices pertaining to Shirley Anna Kennedy ... ."

EEOC's Position

The EEOC opposes this request and asks that the Court quash the subpoena and prohibit the production of Ms. Kennedy's medical records. The EEOC contends that the requested documents are subject to the federal common law psychotherapist-patient privilege. The EEOC further argues that Kennedy did not waive the privilege by asserting a claim for emotional distress damages because the EEOC is only seeking garden variety emotional distress damages on Ms. Kennedy's behalf. This suit does not involve a separate claim of intentional or negligent infliction of emotional distress, there is no claim for psychiatric injury or disorder, nor is a claim of unusually severe distress. The EEOC has not identified any medical or mental/psychological expert and will not call any health care practitioners, or otherwise elicit testimony referencing any visit to a medical professional owing to Ms. Kennedy's emotional reaction to the events underlying the gender harassment claim. As such, Ms. Kennedy's mental condition is not "in controversy," and she has not waived her privilege with regard to her medical records. Several other courts have reached this conclusion and have upheld the premise that a party does not put his or her emotional condition at issue by seeking garden variety emotional distress damages without more.

CPT's Position

CPT contends that the documents are relevant because Ms. Kennedy is seeking to recover damages for emotional distress in this action. The subpoena is directed at Dr. Iilano, a mental health practitioner, whom Ms. Kennedy consulted immediately upon her termination as an employee. At her deposition, Ms. Kennedy testified that she resigned in part over sexual harassment by a CPT employee and immediately consulted with Dr. Iilano. According to Ms. Kennedy, she has not returned to the workforce since her employment at CPT ended and she remains on permanent disability under treatment with Dr. Iilano for depression.

CPT argues that this Court should take a broad approach which upholds a waiver of the privilege when a simple allegation of emotional distress is made. CPT alleges that EEOC has placed Ms. Kennedy's health records at issue because of the possibility of multiple causes for her anxiety and related apportionment issues which arise in the context of Ms. Kennedy's diagnosis of depression and her disability. Although the EEOC asserts that it is not asserting any special damages on behalf of Ms. Kennedy, the complaint alleges a prayer for "emotional pain and suffering, inconvenience, loss of enjoyment of life and humiliation." The only injury asserted is the emotional distress she allegedly suffered by reason of the sexual harassment claimed which is intertwined with a clinical diagnosis of depression. EEOC's attempt to characterize the claim as mere garden variety is inconsistent with the allegations and Ms. Kennedy's testimony. Therefore, CPT requests that the motion to quash the subpoena be denied and that the Court require production of the documents with protections reasonably calculated to maintain Ms. Kennedy's privacy interests.

*1. Analysis*

In Jaffee v. Redmond, 518 U.S. 1 (1996), the United States Supreme Court formally recognized the psychotherapist-patient privilege. The Court specifically held that "*confidential* communications between a licensed psychotherapist and her patients in the course of diagnosis or treatment are protected from compelled disclosure" Jaffee, 518 U.S. at 5. The Court also recognized, without any further elaboration, that this privilege may be waived by the patient. Jaffee, 518 U.S. at 15 n.14.

Under Jaffee, the party seeking to invoke the benefit of the privilege bears the burden of

showing : 1) the therapist must be licensed, 2) the communications were confidential, and 3) the communications were made during the course of diagnosis or treatment. United States v. Romo, 413 F. 3d 1044, 1047 (9th Cir. 2005) ; Speaker v. County of San Bernardino, 82 F. Supp. 2d. 1105, (C.D. Cal. 2000) (burden of proof for the psychotherapist/patient privilege is on the party seeking to establish that the privilege exists). Thus, Plaintiff bears the burden of invoking the privilege.

Even if a party meets the burden outlined above, a party may waive the privilege. Because the Supreme Court has not addressed the rule of waiver of the psychotherapist-patient privilege when a plaintiff brings forth claims based on emotional distress, two different approaches to the waiver have emerged since Jaffee. Under the broad approach, the psychotherapist-patient privilege is waived whenever the patient places his mental condition at issue. Sanchez v. U.S. Airways Inc, 202 F.R.D. 131 (E.D. Penn. 2001) (Plaintiffs alleging Title VII violation waived the psychotherapist-patient privilege by alleging emotional distress); Doe v. City of Chula Vista, 196 F.R.D. 562, 567 (S.D. Cal. 1999) (Plaintiff in employment discrimination case who seeks to recover for emotional distress damages is relying on her emotional condition as an element of her claim and waives the privilege); Sarko v. Penn-Del Directory Co., 170 F.R.D. 127, 130 (E.D. Pa. 1997) (Plaintiff in American with Disabilities Act case who alleged defendant did not accommodate her depression waived psychotherapist-patient privilege); EEOC v. Danka Industries, Inc., 990 F. Supp. 1138 (E.D. Missouri, 1997) (Plaintiff waived psychotherapist patient privilege by alleging emotional distress damages in sexual harassment case brought pursuant to Title VII).

Under the narrow approach, the psychotherapist-patient privilege is waived only if the patient places the contents of the communication itself at issue, which excludes raising a claim of emotional distress. Vanderbilt v. Town of Chilmark, 174 F.R.D. 225, 229 (D. Mass. 1997). Utilizing this approach, the psychotherapist privilege is not waived in cases such as this one, in which a plaintiff alleges generic damages for emotional distress. Fitzgerald v. Cassil, 216 F.R.D.632 (N.D. Cal. 2003); Fristsch v. City of Chula Vista, 187 F.R.D. 614, 621 (S.D. Cal. 1999) (holding that party did not waive the privilege by putting emotional state at issue.); Ruhlman v. Ulster County Department of Social Services, 194 F.R.D. 445, 448-449 (N.D. N.Y. 2000) ("A party does not put his or her emotional condition at issue by merely seeking incidental, 'garden variety' emotional distress

damages, without more."); Santelli v. Electro-Motive, 188 F.R.D. 306, 308-309 (N.D. Ill. 1999) (holding that privilege was not waived so long as plaintiff limits her testimony on emotional distress damages to common humiliation and embarrassment).

Given the facts of this case, the Court finds that the broad approach to the psychotherapist privilege should apply. Although no specific emotional injury was alleged, or no claim of intentional infliction of emotional distress was made, the only remedy the EEOC is seeking on behalf of Plaintiff Kennedy is emotional distress damages resulting from the alleged sexual harassment. Thus, the emotional distress damages is the crux of Plaintiff's claim. The fact that Ms. Kennedy is being treated for depression suggests that multiple causation for her emotional distress may exist. The emotional distress she allegedly suffered as a result of the sexual harassment could have been effected by her depression and vise versa. Defendant should be able to determine whether Plaintiff's emotional state may have been effected by something other than Defendant's alleged actions. "For each item of damages ... the plaintiff must show that the damage was proximately caused by the defendant's unlawful conduct. In turn, the [defendant] is entitled to show that other factors contributed to the plaintiff's damages." Doe v. City of Chula Vista, 196 F.R.D. at 568 (S.D.Cal.,1999) (citations omitted). As noted in by the court in Sanchez v. U.S. Airways Inc,:

> To allow Plaintiffs to make a claim for emotional distress, but shield information related to their claim, is similar to shielding other types of medical records. For instance, if the injury at issue were to the knee, and Plaintiff had sustained a subsequent knee injury requiring treatment, Plaintiffs would not be able to hide the details of the subsequent knee injury because of privilege or privacy considerations. In order to allege and recover for a harm, Plaintiffs need to show the existence and extent of the harm. The particular value of the harm is best left to the fact-finder, after a careful view of the facts. The only way to adequately review the facts is to bring to light relevant information.
> Sanchez v. U.S. Airways, Inc., 202 F.R.D. at 136.

This analogy demonstrates that it is only fair to allow Defendant access to the information. To protect the records would allow Plaintiff to proceed with a claim on unequal terms. If the EEOC wants a jury to compensate Plaintiff for emotional distress, Defendant should be able to explore in discovery, other circumstances that may have caused the injury.[2] The court can be the gatekeeper of

---

[2] The Court has considered the possibility of denying the motion to compel and limiting Plaintiff Kennedy's testimony only to the general emotional distress, humiliation, and embarrassment. See, Santelli v. Electro-Motive, 188 F.R.D. at, 308-309. However, although Plaintiff indicated at oral argument Ms. Kennedy is not attributing the depression she suffers to the sexual harassment, Plaintiff has not requested this limitation. Further, this Court will

14

the ultimate admissibility of the evidence through a Rule 403 balancing analysis at trial. A protective order, and a direction that any of the disclosed material filed with the court must be done under seal, will protect Ms. Kennedy's privacy rights.

In reaching this conclusion, the Court notes "although [discovery] does have its boundaries, the scope of discovery is broadly construed.' Babbitt, et al., v. Albertson's Inc., 1992 WL 605652 * 5 (N.D. Cal. 1992) citing Oppenheimer Fund v. Sanders, 437 U.S. 340 (1978). Furthermore, in Title VII cases, courts should avoid placing unnecessary limitations on discovery. Johnson v. Montgomery Ward & Co., 173 F.R.D. 524, 526 (D. Nev. 1997). The release of the records is also strengthened by approaches adopted by other circuit courts. Maday v. Public Libraries of Saginaw, 480 F. 3d 815, 821 (6th Cir. 2007) (plaintiff employee waived any psychotherapist-client privilege by putting her own mental state at issue, and court admitted records subject to 403 balancing); Doe v. Oberweis Dairy, 456 F. 3d 704, 718 (7th Cir. 2006) (in intentional infliction of emotional distress case, plaintiff by seeking damages for emotional distress puts her psychological state at issue, and the defendant is entitled to recover any records of that state); Schoffstall v. Henderson, 223 F. 3d 818, 823 (8th Cir. 2000) (claims alleging extreme emotional distress caused by sex discrimination, retaliation, and harassment placed plaintiff's mental condition in issue, waiving her psychotherapist-client privilege.).

Finally, pre-Jaffe, Ninth Circuit decisions, recognized the waiver of the psychotherapist-patient relationship when emotional claims are alleged. See, Maynard v. City of San Jose, 37 F.3d 1396,1402 (9th Cir. 1994) (pre-Jaffee case recognizing waiver of psychotherapist-patient privilege when patient puts his emotional condition at issue during the trial); Caesar v. Mountanos, 542 F. 2d 1064 (9th Cir. 1976) (pre-Jaffe case holding California Evidence Code § 1016 providing for psychotherapist privilege is not absolute and is waived under the "patient-litigation" exception).

### IV. Order

Accordingly, all arguments having been heard and considered, IT IS HEREBY ORDERED:

1) EEOC's motion to compel financial records is GRANTED IN PART. Within 30 days, Defendant shall produce balance sheets, statements of income, and statements of cash flow for the

---

leave decisions regarding the limitation of evidence to the trial judge.

years 2007, 2008, and to the extent that they are available through 2009. All information released will be subject to a stipulated protective order devised by the parties;

2) Defendant's Motion to Compel the depositions of EEOC investigator Tuazon and the Rule 30(b)(6) designee is GRANTED IN PART. Defendant may question the witnesses to clarify ambiguities related to the factual aspects of the investigation. However, any conclusions, interpretations, or recommendations that the investigator formulated will be subject to the deliberative process privilege. If Plaintiff determines that the Rule 30(b)(6) designee will be someone other than Ms. Tuazon, Plaintiff shall identify that individual and inform Defendant within five days. Any depositions shall be completed within forty-five days;

3) EEOC's motion to quash the subpoena duces tecum requiring Daisy Iilano, M.D., to produce the medical/psychological records of Shirley Kennedy is DENIED. These medical/psychological records shall be produced within thirty days subject to a stipulated protective order devised by the parties; and

4) Within five days, the parties are to file a proposed stipulated protective order which defines the parameters of the limited release of the financial information and Ms. Kennedy's medical record as outlined above**.** No information shall be released prior to the Court's approval of the stipulated protective order. Any party seeking to file any financial documents or medical records with the Court shall lodge the document under seal pursuant to Local Rules 39-140 and 39-141 so as to preserve its confidentiality pending the Court's determination regarding whether a privilege exists that precludes the use of the document as evidence or alternatively, determining what safeguards should be utilized if the confidential information is to be considered as evidence.

IT IS SO ORDERED.

Dated: __June 18, 2009__              _____/s/ Gary S. Austin_____
                                                              UNITED STATES MAGISTRATE JUDGE